IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TYWANA G. GUNN                                                          PLAINTIFF

vs.                                                     CIVIL ACTION NO. 1:12CV043-SAA

MICHAEL ASTRUE,
Commissioner of Social Security                                         DEFENDANT

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Tywana G. Gunn for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff filed an application for supplemental security income ("SSI") on May 4, 2009 alleging disability beginning on April 14, 2009. Docket 9, p. 140-45, 165. Plaintiff's claim was denied initially on August 14, 2009, and upon reconsideration on November 6, 2009. *Id.* at 61-68. She filed a request for hearing and was represented by counsel at the hearing held on January 12, 2011. *Id.* at 69, 32-48. The Administrative Law Judge (ALJ) issued an unfavorable decision on March 15, 2011, and on December 27, 2011, the Appeals Council denied plaintiff's request for a review. *Id.* at 6-8. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

Plaintiff was born on September 9, 1967 and has a twelfth grade education. Docket # 9, p. 34,142. She was 43 years old at the time of the ALJ's decision. Plaintiff's past relevant work was as a nurse's assistant and a housekeeper. *Id.* at 157. She previously applied for SSI, but was denied on February April 16, 2009. *Id.* at 49-61. Plaintiff contends that she became disabled before her application for SSI as a result of depression and "pain all over her body." *Id.* at 160.

The ALJ determined that plaintiff suffered from "severe" impairments including "undifferentiated rheumatism, migraine headaches and depression" (Docket #9, p. 17), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 4165.926). *Id.* at 13. Based upon testimony by the vocational expert [VE] at the hearing and upon consideration of the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift and carry ten pounds occasionally and less than ten pounds frequently. She can stand and walk a total of two hours out of an eight-hour work day. She can sit six hours of an eight-hour work day. . . .

Docket 9, p. 20. Upon further analysis under applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible in that her claimed symptoms, stated limitations and subjective complaints – particularly concerning the intensity, persistence and limiting effects of these symptoms – are not credible. *Id.* at 24. After evaluating all of the evidence in the record, including testimony of both plaintiff and a VE at the hearing, the ALJ held that plaintiff could perform the job of an escort vehicle driver, napper tender, laminator,

2

hand mounter and a fishing lure assembler. *Id.* As a result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.*

Plaintiff claims that the ALJ erred because he did not properly evaluate plaintiff's credibility, did not properly question the VE based upon the RFC and did not properly evaluate the opinions of Dr. Hardy. Docket 13.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the

---

[1]*See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[5]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence

---

[6]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[7]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8]*Muse*, 925 F.2d at 789.

[9]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

**A. Whether the ALJ properly considered the plaintiff's credibility.**

Plaintiff contends that the ALJ improperly afforded little weight to her allegations and complaints. Docket 13, p. 13. Specifically, the plaintiff asserts that the ALJ improperly considered her "physical appearance during the hearing in the portion of his decision where her subjective complaints are discussed." *Id.* The Commissioner responds that the ALJ properly noted plaintiff's appearance and demeanor at the hearing and considered it in conjunction with other factors in evaluating the plaintiff's credibility. Docket 14, p. 8. In his opinion, the ALJ noted that he

> observed that the claimant portrayed little evidence of pain or discomfort while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity. . . . It is emphasized that this observation is only one among many factors being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

5

Docket 9, p. 24. The Fifth Circuit has routinely held that "it is not reversible error for an ALJ to consider demeanor as one of the factors in evaluating a claimant's credibility." *Taylor v. Apfel*, 172 F.3d 870 (5th Cir. 1999), citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

In evaluating plaintiff's credibility, the ALJ considered the medical records and opinions of at least six physicians, third-party function reports submitted by plaintiff's daughter and a friend, Willie Swain, and plaintiff's own testimony. The ALJ thoroughly analyzed the plaintiff's medical records, as well as the records of examinations requested by Social Security. The plaintiff's appearance and demeanor was only one of the many factors considered by the ALJ in evaluating the plaintiff's credibility. The ALJ properly used his discretion in weighing the credibility of plaintiff's complaints and his ultimate determination was based upon the record as a whole. Because the record amply supports the ALJ's conclusion, this argument is without merit.

Plaintiff also asserts that the ALJ failed to properly consider the side effects of her medications on her ability to work [Docket 13, p. 15], arguing that this is further evidence of the ALJ's failure to conduct a proper credibility evaluation. *Id.* According to the Commissioner, there is no "objective documentation that plaintiff experienced medication side effects that would limit her functional abilities . . ." Docket 14, p. 9. Interestingly, the only record evidence plaintiff cites to support her assertion that her medication affects her ability to work is her own testimony and Dr. Lane's record from his 2009 consultative examination; in that report, he remarks that plaintiff appeared to be "heavily sedated" and "sluggish." However, plaintiff herself admits that at the time she was examined by Dr. Lane, she was not taking any of the

prescription medications that she was taking at the time of the hearing.[11] Docket 13, p. 16. There is no record evidence that plaintiff has ever reported to her treating or even any examining physicians that she experienced side effects from her medications. The only mention ever made concerning plaintiff's alleged impairments caused by her medication is her own testimony at the hearing that the medications she takes cause drowsiness, sleepiness and nausea. Docket 9, p. 31. The ALJ properly considered plaintiff's complaints regarding the side effects of her medication in conjunction with the medical evidence in evaluating both plaintiff's credibility and her RFC. *See Richmond v. Shalala*, 23 F.3d 1441, 1443 (8th Cir. 1994) (claimed side-effects of medication never discussed with physician nor change of medication requested as basis for discounting testimony). Therefore, this argument is without merit.

## B. Whether the ALJ properly relied upon testimony of the VE.

Plaintiff contends that the VE's testimony is not consistent with the full range of limitations contained in the ALJ's hypothetical and conflicts with the DOT. Docket 13, p. 18. In particular, plaintiff asserts that even though the ALJ's hypothetical excluded jobs that require "attention to detail," every job identified by the VE requires attention to detail. *Id.* The VE only discussed jobs that are "consistent with a limitation to simple, routine, repetitive tasks," goes the argument, but that discussion does not necessarily include jobs that do not require attention to detail. *Id.* According to the Commissioner, however, the VE's understanding of the ALJ's hypothetical is consistent with the definitions of skill levels used by the Social Security

---

[11] Plaintiff submits the unconvincing theory that this condition might have been attributable to other medications, such as Tylenol PM, and in support offers a note from consultative examiner Dr. Howell to the effect that plaintiff told him on September 9, 2009 that she took Tylenol PM to help her sleep, but it did not help. Docket 9, p. 366.

Administration, and this argument simply posits alternative definitions for well-established classifications of jobs instead of legal authority necessary to support her argument. Docket 14, pp. 10-12.

The Fifth Circuit has routinely found that "[t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Brown*, 805 F.2d 1168, 1170 (5th Cir. 1986). "A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Id.* In articulating the "middle ground" rule, the Fifth Circuit has held that "[t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . we agree with the majority of circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). As further explained by the Circuit,

> all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development at the administrative hearing.

*Id.*

The court agrees with the Commissioner. Plaintiff has attempted to create an issue by simply rephrasing the terms routinely utilized by the Social Security Administration, ALJs and VEs that have specific meaning. Plaintiff has provided no legal basis for these alternative

meanings, and her counsel did not take the opportunity provided at the hearing to question the VE concerning whether the proffered jobs required attention to detail. The undersigned is not persuaded that any conflict exists between the hypothetical, the VE testimony and the DOT regulation, but if it does, it is not the direct and obvious type asserted by plaintiff, but instead it is an implied or indirect conflict. According to the Fifth Circuit, when the conflict between the VE's testimony and the DOT exists that is tangential, implied or indirect, as is the case here, and the conflict was not addressed at the administrative hearing, the VE's testimony may be accepted and relied upon by the ALJ without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so. *Cary v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Plaintiff's counsel was given the opportunity at the administrative hearing to object and question the VE concerning these alleged limitations, but chose not to do so. There is nothing in plaintiff's record to indicate that the VE's testimony that plaintiff can perform the jobs identified is incorrect or contradictory of the DOT. Therefore, the ALJ's reliance upon the VE's testimony was proper, and the ALJ's decision on this issue is supported by substantial evidence.

### C. Whether the ALJ properly considered the opinions of plaintiff's treating physician.

Plaintiff contends on appeal that the ALJ's ultimate opinion is not supported by substantial evidence because he did not afford proper weight to her treating physician's opinions and did not perform the proper six-part analysis for discounting the treating physician's opinions. Docket 13, p. 22. Dr. Hardy submitted a medical source statement stating that plaintiff experienced marked limitations in her ability to interact with the public and co-workers and in her ability to perform daily activities. The ALJ noted that Dr. Hardy "found that the claimant experienced mostly marked restrictions in all her abilities. . . ." and that "her mood, low

concentration, poor memory, isolation and hallucinations make her a poor candidate for employment." Docket 9, p. 21.

The Secretary responds, and this court agrees, that the ALJ properly discounted Dr. Hardy's opinions because they were not supported by objective, clinical evidence. For an ALJ to properly afford lesser weight to the treating physician's medical opinions, he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Because the ALJ did not follow these criteria, says plaintiff, his refusal to afford controlling weight to Dr. Hardy's opinions was error as a matter of law. The Commissioner responds that *Newton* does not apply to this case because the record provides "good cause" for the ALJ's finding that the treating physician's opinion was not entitled to controlling weight and because there is substantial competing evidence from multiple examining physicians of record. Docket 14, p. 13-15. The Commissioner asserts that where there is competing evidence from multiple examining physicians of record, as is the case here, the ALJ is not required to perform the full *Newton* analysis before discounting the opinions of the treating physician. *Id.*, p. 15. The court concludes that in light of the objective evidence, the opinions from consultative and other treating physicians and the plaintiff's testimony, the ALJ had sufficient evidence to determine plaintiff's impairments and to make the ultimate decision regarding disability.

Reading the record as a whole, the court concludes that the ALJ's opinion is supported by substantial evidence and should be affirmed. It is clear that the ALJ reviewed the entire record, properly identified the relevant listed impairments, fully discussed the evidence that was contained in the record and concluded that the balance tipped toward functional ability in

determining whether the plaintiff's impairments met or equaled a listed impairment.  The ALJ performed a thorough analysis of the plaintiff's impairments and clearly considered the treatment records of the plaintiff's treating physicians Dr. Hardy and others at Community Counseling Service, as well as the consultative exams performed at the ALJ's request.  The plaintiff did not provide credible evidence that her alleged impairments affect her ability to work, and the ALJ adequately explained his reasons for questioning the plaintiff's credibility.  Therefore, the undersigned holds that the decision of the Commissioner should be affirmed.

## IV.  CONCLUSION

After diligent review, the court holds that the ALJ's decision was supported by substantial evidence and must be affirmed.  A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 7th of November, 2012.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE